Filed 3/14/16  In re David Z. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DAVID Z. et al., Persons Coming Under the Juvenile Court Law,<br><br>_____<br><br>NANCY C.,<br><br>    Petitioner,<br><br>    v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES,<br><br>    Respondent.<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Real Party in Interest. | B269032<br><br>(Los Angeles County<br>Super. Ct. No. CK64114) |

PETITION FOR EXTRAORDINARY WRIT.  Emma Castro, Commissioner.
Petition denied.

Los Angeles Dependency Lawyers, Law Office of Danielle Butler Vappie and Courtney K. Fisher for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

By petition for extraordinary writ, Nancy C. (mother) challenges the juvenile court's order restricting her to monitored visits with her five children following the termination of her reunification services and the setting of a hearing under Welfare and Institutions Code section 366.26.[1] We find no abuse of discretion, and thus we deny the petition on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Prior Proceedings

David Z., Jonathan Z., Matthew Z., Jacob Z., and Joshua Z. (born September 1998, November 1999, June 2002, October 2003, and July 2005, respectively) are the children of mother and William Z. (father).

The family has a long history of involvement with the Department of Children and Family Services (DCFS). Between 2003 and 2013, DCFS received 11 referrals alleging, among other things, that the family home was filthy and unsanitary, the children attended school in dirty clothes, there was no food in the home, the home and refrigerator were infested with roaches, mother routinely brought the children to school hours late, and both parents abused drugs. The family was subject to DCFS supervision from 2006 to 2008, and received voluntary family maintenance services from April 2010 to February 2011. Those services ceased in 2011 "when mother . . . simply moved away and failed to inform her case worker of her whereabouts."

In January 2014, DCFS received another referral after mother tested positive for marijuana, methamphetamines, and ecstasy in connection with an emergency housing application; a month later, she tested positive for marijuana. DCFS reported it had great difficulty making contact with mother because she moved frequently and did not maintain a reliable phone number. The children told DCFS they did not go straight home from school because mother might not be there, so they usually stayed at the public library until it closed at 8:00 p.m. If mother did not come get them by 8:00 p.m., they

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

took the bus home. Four of the five children reported seeing mother smoking a drug they believed to be marijuana.

## II.

## The Present Proceeding

In November 2014, DCFS received reports that father was incarcerated, mother and the children were homeless, and the children were not regularly eating or attending school.[2] The children were detained from mother on November 12, and a juvenile dependency petition was filed on November 17, 2014, alleging that the children were subject to the jurisdiction of the juvenile court pursuant to section 300, subdivision (b) because mother "is currently unable to provide appropriate parental care and supervision, . . . endanger[ing] the children's physical health and safety and plac[ing] the children at risk of harm and damage."

On November 17, 2014, the court found a prima facie case for detaining the children. DCFS was ordered to provide mother with immediate housing assistance, and mother was granted unmonitored visits "as frequently as can be arranged."

The jurisdiction/disposition report, dated January 12, 2015, said the five children had been placed with maternal cousin Sonia W., her husband, and their four daughters. The five Z. children were reported to be thriving in their new placement. DCFS said mother had agreed to drug test, but was reported a "no show" on January 2, 2015. She visited the children infrequently. DCFS therefore recommended that mother's visitation be limited to twice a week, and that mother be required to make arrangements with the caregivers at least 24 hours before any visit.

On January 12, 2015, the court set a contested hearing for April, and ordered DCFS to provide mother referrals for individual counseling and parenting classes. DCFS provided the referrals the same day. However, as of April 2015, DCFS reported that mother had contacted DCFS only once since the January hearing, had not reported any

---

[2] Father is expected to be incarcerated through November 2016; thereafter, he is subject to deportation. He is not a party to this writ petition.

3

progress on individual counseling or parenting education, and had not returned phone calls asking her to drug test. DCFS suspected mother was using illegal drugs.

On April 29, 2015, the court sustained the petition. Mother was ordered to participate in individual counseling and to drug test on demand "upon reasonable suspicion that mother is abusing substances." She was granted weekend overnight visits at maternal grandmother's home.

In August 2015, DCFS reported that mother had been in custody and had not notified the caregivers of her release. Further, mother had not had overnight visits with the children because maternal grandmother refused to allow those visits at her home; maternal grandmother told DCFS that she did not want mother to know where she lived and she "believe[d] mother will drop minors off and leave."

In October and November 2015, DCFS reported that the Z. children continued to thrive in the home of their caregivers. Each child was regularly attending school, receiving appropriate medical care, and participating in extra-curricular activities. Mother, however, was "not actively involved in this DCFS case. Mother . . . failed to comply with Court orders for random drug testing, parenting, and individual counseling [and] failed to meet with DCFS during this period of review to discuss the health, welfare, safety and reunification of her children. CSW [children's social worker] and caregiver went to the extent of offering to meet with mother at the caregiver's home, offering any day in September, allowing her to pick a date. CSW and caregiver waited the entire month for mother to schedule an appointment. Mother failed to indicate a date, therefore failed to meet with DCFS." She was reported to be a "no show" for all drug test referrals. Despite "liberal opportunities presented for visitation," she visited, phoned, and texted the children only sporadically. Mother failed to attend scheduled meetings with DCFS in October and November 2015.

On November 17, 2015, the court ordered that mother would continue to have unmonitored visitation, but that such visits should occur at some place "other than home of caretaker." This change apparently was made at the caregiver's request that future

4

visits between mother and the children take place at a DCFS office "to alleviate mother's false statement [the caregiver] is interfering with and/or refusing [to facilitate] visits."

## III.

### Termination of Mother's Reunification Services

On December 10, 2015, the court terminated mother's family reunification services. The court allowed mother to continue to visit the children, but ordered that such visits be monitored.

Mother's counsel objected, urging that mother's visits had been unmonitored throughout the case, and "I don't believe there's any reason at this time to go back to monitored." The court disagreed: "Given the information in the lengthy, detailed report for the .22 hearing, the court disagrees with you. Given the information in the [reports] that the court has carefully reviewed, the court [orders] monitored visits for the mother and her children."

### PETITION FOR EXTRAORDINARY WRIT

Mother filed the present petition for extraordinary writ on February 8, 2016, urging that the juvenile court abused its discretion by ordering that her visits with her children be monitored. She suggests that because the visitation order "was a part of, and integrally related to, the order referring the case for a selection and implementation hearing pursuant to [section] 366.26," the visitation order is a proper subject for extraordinary writ relief pursuant to California Rules of Court, rule 8.452.

On February 10, 2016, DCFS filed a letter with the court stating that it took no position with respect to mother's request for unmonitored visits.

We issued an order to show cause on February 11, 2016 and set the matter for hearing. For the reasons that follow, we now deny the writ petition on the merits.

When a juvenile court orders a hearing pursuant to section 366.26, it shall "order the termination of reunification services to the parent," but shall "continue to permit the parent or legal guardian to visit the child pending the hearing unless it finds that visitation would be detrimental to the child." (§ 366.21, subd. (h).) The juvenile court is accorded

5

broad discretion in setting visitation orders. (*In re Megan B*. (1991) 235 Cal.App.3d 942, 953.)

On appeal, we will not reverse the juvenile court's exercise of discretion unless the record clearly shows it was abused. (*In re Megan B.*, *supra*, 235 Cal.App.3d at p. 953.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.)

In the present case, the juvenile court did not abuse its discretion in ordering monitored visits for mother. Mother had a history of illegal drug use, and her continuing use of illegal drugs could not be ruled out because she refused to drug test. She regularly left her children unattended or without proper supervision. Despite court orders to do so, mother did not keep DCFS informed of her whereabouts, and DCFS had great difficulty making contact with her because she moved frequently and did not maintain a reliable phone number. For all of these reasons, the order of monitored visits was well within the juvenile court's broad discretion.

Mother contends that the juvenile court lacked discretion to restrict her visitation absent a finding of detriment. Not so: The statute requires a finding of detriment if the court *terminates* visitation, but no such finding is required if the court merely reduces or restricts visitation. (§ 366.21, subd. (h).) Because the juvenile court did not terminate mother's visitation in this case, a finding of detriment was not required. (*In re Megan B.*, *supra*, 235 Cal.App.3d at p. 953.)

6

## DISPOSITION

The petition for an extraordinary writ is denied on the merits.  Our decision is immediately final as to this court.  (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:



ALDRICH, J.



LAVIN, J.